FIRST NATIONAL BANK OF WAHOO, APPELLANT, V. FRANK
HAVLIK ET AL., APPELLEES.

FILED MAY 18, 1897.   No. 7222.

1. Gift from Husband to Wife.  The married woman's act, being for
the purpose of extending and not contracting or limiting the rights
of married women in this state, will not be held to have abrogated
the equitable rule which upheld gifts from husbands to wives,
made when the husband was solvent, and which did not impair
the existing rights of creditors. *Dayton Spice-Mills Co. v. Sloan,*
49 Neb., 622, followed.

2. ———: TRUSTS: RIGHTS OF CREDITORS.  Evidence examined, and *held*
to sustain a finding that property in a wife's name was not held
in trust for her husband and was not subject to the payment of his
debt created after she acquired the property.

APPEAL from the district court of Saunders county.
Heard below before WHEELER, J.   *Affirmed.*

A statement of the facts appears in the opinion.

*Simpson & Sornborger* and *Good & Good,* for appellant.

In support of an argument in favor of the contention
that the property in controversy belongs in equity to the
husband and should be subjected to the payment of ap-
pellant's judgment, reference was made to the follow-
ing cases: *Bailey v. Gardener,* 31 W. Va., 94; *Musgrave
v. Parish,* 11 S. W. Rep. [Ky.], 464; *Seitz v. Mitchell,* 94
U. S., 584; *Clinton Mfg. Co. v. Hummell,* 25 N. J. Eq., 45;
*Switzer v. Valentine,* 4 Duer. [N. Y.], 96; *Glaun v. Young-
love,* 27 Barb. [N. Y.], 480; *Woodbeck v. Havens,* 42 Barb.
[N. Y.], 66; *Ryder v. Hulse,* 24 N. Y., 372; *Connors v. Con-
nors,* 4 Wis., 112; *Elliott v. Bently,* 17 Wis., 591; *Edson v.
Hayden,* 20 Wis., 682; *Duncan v. Roselle,* 15 Ia., 501;
*Cramer v. Reford,* 17 N. J. Eq., 367; *Hamill v. Henry,* 69
Ia., 752; *Thomas v. Desmond,* 63 Cal., 426; *Goddard v.
Reagan,* 28 S. W. Rep. [Tex.], 352; *Brittain v. Crowther,*
54 Fed. Rep. 295; *McAnally v. O'Neal,* 56 Ala., 299; *Humes
v. Scruggs,* 94 U. S., 22; *Triplett v. Graham,* 58 Ia., 135;

*Steinkraus v. Korlh,* 44 Neb., 777; *Plummer v. Rummel,* 26 Neb., 147; *Brownell v. Stoddard,* 42 Neb., 177; *Aultman v. Obermeyer,* 6 Neb., 260; *First Nat. Bank v. Bartlett,* 8 Neb., 319; *Thompson v. Loenig,* 13 Neb., 386; *Stevens v. Carson,* 30 Neb., 544; *Hill v. Fouse,* 32 Neb., 637.

*J. R. Gilkeson, H. Gilkeson,* and *Reese & Gilkeson, contra.*

IRVINE, C.

This was an action in the nature of a creditor's bill by the First National Bank of Wahoo against Frank Havlik, Barbara Havlik, his wife, Emma Sommers, and the Packers' National Bank of South Omaha, to subject certain property to the payment of a judgment of the Wahoo bank against Frank Havlik. The judgment was rendered in September, 1892, and the debt on which it was based was created in May, 1892. The petition alleged that in June, 1892, Frank Havlik was the owner of lots 4, 5, and 6, in block 170, of the County Addition to Wahoo, in Saunders county, and on the 9th of June, without consideration and with the intent of defrauding his creditors, he conveyed the same to Emma Sommers; that on the 3d of May, 1891, Frank and Barbara Havlik purchased of Louis Shroeder, with money of Frank's, lot 24, block 3, Brown Park Addition to South Omaha, Douglas county, and that the title was taken in Barbara Havlik in secret trust for Frank, and with the purpose of placing it beyond the reach of his creditors; that on the 24th of June, 1891, Frank Havlik purchased from the Union Stock Yards Company lots 13 and 14, in block 9, and lot 10, in block 12, in the First Addition to South Omaha; that said realty was paid for out of the moneys of Frank, but the title taken in the name of Barbara in secret trust for him and with a similar fraudulent purpose; that on the 22d of March, 1892, Frank Havlik was the owner in fee of a certain tract of land in Saunders county, which was then conveyed to one Zahourek, who gave in part payment therefor three promissory notes, one for $800, two for $700

each, both due March 1, 1894, and made payable to the
order of Frank and Barbara; ·that said notes were fraud-
ulently transferred by Frank to Barbara for the purpose
of placing them beyond the reach of Frank's creditors,
and were deposited for safe keeping with the Packers'
National Bank.   These notes turned out to be in the pos-
session of Barbara and the Packers' National Bank was
therefore dismissed from the case.   By the answers of
the two Havliks and Emma Sommers, all allegations of
fraud were denied and it was pleaded that the convey-
ances and transfers referred to in the petition were made
for good and valuable considerations.   The court found
that lots 5 and 6, in block 170, in Wahoo, were the home-
stead of the Havliks and did not exceed in value the sum
of $2,000.   It then found that Frank had an undivided
one-half interest in lot 4, and decreed that that interest
be subjected to the payment of the judgment.   This dis-
posed of the interest of Emma Sommers, and so far no
complaint is made of the decree by any party.   As to
the transactions with Barbara Havlik, the court found
in favor of the defendants.   The plaintiffs proceeded
upon the theory that all the property in controversy was
the result of profits derived from a saloon and boarding
house kept in Wahoo in the name of Frank Havlik; that
while Mrs. Havlik advanced $350 to permit him to enter
into this business, and while the boarding house portion
thereof was maintained by her labor, there was no loan
to Frank of the money, and she had no interest in the
business or the profits thereof; that the money with
which the property was bought having been so de-
rived, the property was in equity Frank's, and not Bar-
bara's, and that the titles were taken in Barbara in secret
trust.   As to the notes the plaintiffs' theory was that
they having been received in part payment for the sale
of land which was in equity Frank's, the transfer thereof
to Barbara was for the purpose of creating a like secret
trust.   The very able briefs discuss many authorities
bearing upon the liability of property so acquired and

conveyed for the debts of the husband.   But the relative
times of the conveyances and of the creation of plaintiff's
debt render it, in the light of the decisions of this court,
unnecessary to consider these questions.   It will be ob-
served that the South Omaha property was all acquired
by Barbara prior to the time when Frank became in-·
debted to the bank.   The evidence tends strongly to show
that Frank had contracted for the purchase of this prop-
erty, but having become addicted to the excessive use of
intoxicants, was unable to make his payments, and that
most of the purchase money was in fact paid by Barbara
out of her own separate earnings;   and the conveyances
were therefore made to her.   This was done with Frank's
knowledge, if not his consent, and while there was intro-
duced in evidence a document which seems to be a peti-
tion in the district court of Douglas county by Frank
against Barbara and the vendor of part of the property,
seeking to annul the conveyance to her, it is not shown
that the document was genuine or that any such action
was ever begun.   The circumstances, especially in the
light of subsequent dealings between the parties, are
sufficient to establish a ratification, or at least ac-
quiescence, by Frank which would operate as a gift of
his equity, if any he had, in this property.

It is also claimed in argument that prior to the sale of
the Saunders county farm a loan was secured of $2,500
by placing a mortgage thereon, and that this money was
used in improving the South Omaha property.   If the
farm was in fact Frank's and he chose to borrow money
in this manner and improve his wife's real estate, it would
be another transaction in the nature of a gift to her.

As to the notes, it is contended that the transfer was
not made until after the bank's debt was incurred.   But
the weight of the evidence is the other way and supports
the finding of the court.

It follows that if all of the contentions of the appellant
be well founded as to the property having been acquired
by moneys earned by and belonging to Frank, in each case

there was a gift thereof to Barbara prior to the creation of the debt on which the bank's judgment is founded. Our married woman's act being for the purpose of extending and not contracting or limiting the rights of married women in this state, will not be held to have abrogated the equitable rule which upheld gifts from husbands to wives, made when the husband was solvent, and which did not impair the existing rights of creditors. (*Dayton Spice-Mills Co. v. Sloan*, 49 Neb., 622; *Studebaker v. Welch*, 51 Neb., 228.) The application of this principle disposes of the case.

AFFIRMED.